UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL DUNHAM-BEY,

      Plaintiff,                                     Hon. Janet T. Neff

v.                                                 Case No. 1:09-CV-191

CYNTHIA WEMPLE, et al.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Wemple's Motion for Summary Judgment. (Dkt. #17). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted in part and denied in part**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint and attachments thereto. (Dkt. #1). On or about October 14, 2007, Plaintiff received "legal materials from the United States Supreme Court delivered to Plaintiff as 'legal mail.'" Defendants opened this legal mail outside Plaintiff's presence in violation of his constitutional rights.[1] Plaintiff further asserts that Defendants confiscated portions of the mail in question.

---

[1] Plaintiff does not affirmatively assert in his complaint that he had requested that his legal mail be opened only in his presence, but in her motion for summary judgment, Defendant Wemple states that she "does not contest that [Plaintiff] requested that his legal mail be opened only in his presence." (Dkt. #18 at 3).

Plaintiff initiated this action on March 5, 2009, against Defendants Cynthia Wemple and other unknown mail room clerks. Plaintiff asserts that Defendants' conduct constitutes a violation of his rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiff has sued Defendants in their official and personal capacity seeking declaratory, injunctive, and monetary relief.[2] While service has been effected on Defendant Wemple, such has not been accomplished as to the unidentified Doe Defendants. Defendant Wemple now moves for summary judgment.

### **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue

---

[2] While Plaintiff has specified in his complaint the specific monetary relief he seeks, he has failed to articulate the injunctive relief sought.

for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*,

270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.**     **First Amendment**

Plaintiff asserts that by reading his legal mail outside his presence, Defendants violated his First Amendment rights. Specifically, Plaintiff asserts that Defendants violated his right of access to the courts as well as his right to receive legal mail without undue interference.

### A. Right of Access to the Courts

It is well established the prisoners have a constitutionally protected right of access to the courts, *see Bounds v. Smith*, 430 U.S. 817, 821 (1977), which includes "the reasonable opportunity to communicate with an attorney." *McFarland v. Luttrell*, 1995 WL 150511 at *2 (6th Cir., Apr. 5, 1995) (citations omitted). Accordingly, interference with a prisoner's legal mail may violate the prisoner's right of access to the courts. *Id.*

The First Amendment protects every inmate's right of access to the courts, however, this protection extends only to "direct appeals, habeas corpus applications, and civil rights claims." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (citing *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). To state a claim for denial of access to the courts, a prisoner must allege that he suffered "an actual litigation related injury or legal prejudice because of the actions of the defendants." *Erdman v. Martin*, 52 Fed. Appx. 801, 803 (6th Cir., Dec. 12, 2002) (citing *Casey*, 518 U.S. at 349-51); *see also*, *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (to state a claim for denial of access to the courts, Plaintiff must allege that he suffered an "actual injury," such as "the late filing of a court document or the dismissal of an otherwise meritorious claim").

Plaintiff has not alleged that he suffered any litigation related injury or legal prejudice as a result of Defendant Wemple's alleged conduct. Accordingly, the undersigned recommends that Defendant Wemple is entitled to summary judgment as to Plaintiff's claim that he suffered a violation of his First Amendment right of access to the courts.

B.   Interference with Incoming Mail

Plaintiff asserts that Defendant Wemple opened his legal mail outside his presence in violation of his First Amendment rights. Defendant asserts that she is entitled to summary judgment because the mail in question did not qualify as legal mail.

It is well recognized that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). For example, inmates retain the right, under the First Amendment, to receive mail. *See Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). Nonetheless, prison officials may impose restrictions on this right "that are reasonably related to security or other legitimate penological objectives." *Id.*

Courts have long recognized a distinction between legal mail and non-legal mail, the former warranting much greater protection from unreasonable intrusion. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 577 (1974); *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). For example, while prison officials may inspect (and even read) a prisoner's incoming non-legal mail, courts have consistently held that while prison officials have a legitimate right to inspect incoming legal mail for contraband they may not read a prisoner's incoming legal mail and must perform any inspection thereof in the prisoner's presence. *See Sallier*, 343 F.3d at 874. However, "[n]ot all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights." *Id.* Specifically, while mail from a court or an attorney clearly constitutes "legal mail," mail from other sources, such as a county clerk, do not qualify as constitutionally protected legal mail, absent a "specific indication" that the contents are "to be opened only in the presence of the prisoner." *Id.* at 875-878.

Plaintiff asserts that the mail in question was sent to him from the United States Supreme Court. Defendant does not appear to dispute this and has certainly submitted no evidence indicating otherwise.³ Rather than contest that the mail in question was sent by the United States Supreme Court, Defendant asserts that such did not qualify as "legal mail" because it was allegedly "sent from the United States Supreme Court's Office of Public Information." The Court discerns at least two deficiencies in Defendant's argument.

First, while Defendant asserts in her brief that the mail in question was "sent from the United States Supreme Court's Office of Public Information," she offers no *evidence* in support thereof. While Defendant could have easily executed an affidavit that such was the case she has declined to do so. Instead, to support her assertion, Defendant simply references a kite that Plaintiff wrote which suggests the possibility, but does not establish, that the mail in question originated from the United States Supreme Court's Office of Public Information. Moreover, even if Defendant is correct, such constitutes an acknowledgment that the mail in question was sent to Plaintiff from the United States Supreme Court. Defendant attempts to distinguish the United States Supreme Court from the United States Supreme Court's Office of Public Information. This is a distinction without a difference for present purposes, as mail from either originates from the United States Supreme Court. With respect to mail from a court, the *Sallier* court specifically held:

> In order to guard against the possibility of a chilling effect on a prisoner's exercise of his or her First Amendment rights and to protect the right of access to the courts, we hold that mail from a court constitutes "legal mail" and cannot be opened outside the presence of a prisoner who has specifically requested otherwise.

---

³ The Court notes that the only evidence Defendant Wemple has submitted in support of her motion for summary judgment are copies of several kites and grievances Plaintiff submitted regarding the incident(s) giving rise to the present action.

*Id.* at 877.

Defendant Wemple has failed to demonstrate that the mail in question was not legal mail entitled to the aforementioned protections. Accordingly, the undersigned recommends that Defendant Wemple's motion for summary judgment as to this particular claim be denied.

**II.        Due Process Claims**

Plaintiff asserts that Defendants violated his rights under the Fifth and Fourteenth Amendment. Plaintiff does not articulate the basis for these claims. The Court, however, interprets such as asserting due process claims concerning the alleged confiscation of a portion of the legal materials in question. It is not clear whether Plaintiff seeks to assert claims for violation of his substantive or procedural due process rights. This is of no consequence, however, as neither such claim has merit.

A.        Substantive Due Process

In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court addressed the interaction between substantive due process and those rights specifically protected by the Bill of Rights, as well as the proper constitutional foundation upon which to base a § 1983 action.

In that case, Albright was charged with selling a substance that looked like an illegal drug. Following a preliminary hearing, Albright was bound over for trial; however, the court later dismissed the charges because the offense with which Albright was charged did not state an offense under Illinois law. Albright subsequently initiated a § 1983 action in which he charged Oliver, a detective involved in the case, with depriving him of his Fourteenth Amendment substantive due process rights by subjecting him to criminal prosecution without probable cause. *Id.* at 268-70.

The Court observed that substantive due process protection had "for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* at 272 (citing *Planned Parenthood of Southeast Pa. v. Casey*, 505 U.S. 833, 847-849 (1992)). The Court noted the dissimilarity between Albright's claim and the substantive due process rights recognized previously, and further noted its reluctance to expand the concept of substantive due process. *Id.* at 271-72.

The Court then discussed the fact that a number of the protections contained in the Bill of Rights have been made applicable to the states via the Fourteenth Amendment. The Court observed that this process has resulted in the substitution of the specific guarantees of these portions of the Bill of Rights for the more generalized language of the Fourteenth Amendment. *Id.* at 272-73. The Court, therefore, concluded that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Applying this standard, the Court concluded that Albright's allegations directly implicated the Fourth Amendment, pursuant to which he must bring his claim, because substantive due process could afford him "no relief." *Id.* at 274-75.

Here, Plaintiff alleges that his due process rights were violated because Defendants violated his First Amendment right to receive legal mail. This right is adequately protected by the First Amendment. Therefore, as in *Albright*, substantive due process can provide Plaintiff no relief. Accordingly, to the extent that Plaintiff's claims implicate his substantive due process rights, the undersigned recommends that such claims be dismissed.

B.     Procedural Due Process

Plaintiff's procedural due process claims are barred by the doctrine articulated by the Supreme Court in *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part* by *Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee cannot assert a federal due process claim unless he first demonstrates that the state failed to afford him an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537.

The rule articulated in *Parratt* applies where: (1) the deprivation was unpredictable or random (i.e., not accomplished pursuant to an established state procedure); (2) predeprivation process was impossible or impracticable; and (3) the state actor was not authorized to take the action that deprived the plaintiff of his property. *See Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). The *Parratt* rule likewise applies to both negligent and intentional deprivation of property. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984); *Mitchell v. Fankhauser*, 375 F.3d 477, 483-84 (6th Cir. 2004). As these factors are all present in this circumstance, Plaintiff must plead and prove the inadequacy of his state post-deprivation remedies. *See Copeland*, 57 F.3d at 479-480; *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Plaintiff's failure to do so requires the dismissal of his § 1983 due process claim. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not satisfied his burden in this case. He has neither alleged nor demonstrated that his state post-deprivation remedies are inadequate. In fact, numerous state post-deprivation remedies are available to him. For example, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112 ¶ B. Aggrieved prisoners may also submit claims for property loss of less than

$1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112 ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a); *see Green v. State Corrections Dep't*, 192 N.W.2d 491 (Mich. 1971) (state liable for inmate's tortuous injury). Furthermore, the Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff has not demonstrated that an appropriate state-court action would not afford him complete relief for the alleged deprivation of his personal property. Accordingly, the undersigned recommends that Plaintiff's procedural due process claims be dismissed.

### III. Doe Defendants

Plaintiff initiated this action on March 5, 2009. On March 31, 2009, the Court ordered that service be effected on Defendant Wemple. The Court observed that it "lacks sufficient information at this time to order service on the Jane or John Doe Defendants." In the more than eight months since, Plaintiff has neither requested an extension of time to effect service on the Doe Defendants nor requested the Court's assistance in identifying and/or effecting service on the Doe Defendants.

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." If the plaintiff demonstrates good cause for such failure, however, "the court shall extend the time for service for an

appropriate period." Fed. R. Civ. P. 4(m); *see also*, *Bush v. City of Zeeland*, 2003 WL 22097837 at *2 (6th Cir., Sep. 5, 2003) (citation omitted). Considering Plaintiff's lack of diligence, the Court recommends that Plaintiff's claims against the Doe Defendants be dismissed without prejudice for failure to timely effect service.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendant Wemple's Motion for Summary Judgment</u>, (dkt. #17), be **granted in part and denied in part**. Specifically, the undersigned recommends that Defendant Wemple is entitled to summary judgment as to all of Plaintiff's claims, except his claim that she violated his First Amendment right to receive legal mail. The undersigned further recommends that Plaintiff's claims against the Doe Defendants be **dismissed without prejudice for failure to timely effect service**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: February 4, 2010  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge