UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL DUNHAM-BEY,

              Plaintiff,                           Hon. Janet T. Neff

v.                                        Case No. 1:09-CV-191

CYNTHIA WEMPLE, et al.,

              Defendants.

_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on Defendant Wemple's Second Motion for Summary Judgment. (Dkt. #40). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted** and Plaintiff's action dismissed.

## BACKGROUND

        The following allegations are contained in Plaintiff's complaint and attachments thereto. (Dkt. #1). On or about October 14, 2007, Plaintiff received "legal materials from the United States Supreme Court delivered to Plaintiff as 'legal mail.'" Defendants opened this legal mail outside Plaintiff's presence in violation of his constitutional rights.[1] Plaintiff further asserts that Defendants confiscated portions of the mail in question. Plaintiff initiated this action against Defendants Cynthia Wemple and other unknown mail room clerks. Plaintiff asserts that Defendants' conduct violated his

---

[1] Plaintiff does not affirmatively assert in his complaint that he had requested that his legal mail be opened only in his presence, but in her previous motion for summary judgment, Defendant Wemple stated that she "does not contest that [Plaintiff] requested that his legal mail be opened only in his presence." (Dkt. #18 at 3).

First, Fifth, and Fourteenth Amendment rights. Defendant Wemple previously moved for summary judgment. (Dkt. #17).

In an August 31, 2009 Report and Recommendation, the undersigned recommended that Defendant Wemple's motion be granted in part and denied in part. (Dkt. #27). Specifically, the undersigned recommended that Defendant Wemple was entitled to summary judgment as to all of Plaintiff's claims, except his claim that Defendant violated his First Amendment right to receive legal mail. The undersigned also recommended that Plaintiff's claims against the unidentified Doe Defendants be dismissed without prejudice for failure to timely effect service. The Honorable Janet T. Neff adopted this Report and Recommendation. (Dkt. #45). Thus, the only claim remaining in this matter is Plaintiff's claim that Defendant Wemple violated his First Amendment right to receive legal mail. Defendant Wemple now moves for summary judgment as to this claim.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has

had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent

cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th

Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially

higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*,

270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim

for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to

hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United

States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the

Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth

Circuit has repeatedly emphasized that the party with the burden of proof "must show the record

contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no

reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM

MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d

at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion

"is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier

of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).


## ANALYSIS

**I.**        **Personal Involvement**

In his complaint, Plaintiff repeatedly alleges that "Defendant Wemple, Jane Doe or John

Doe" committed the actions giving rise to this action. Liability in a § 1983 action cannot be premised

upon passive behavior or an alleged failure to act, rather liability must be based upon active

unconstitutional behavior.  *See Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999). Defendant moves for summary judgment on the grounds that she was not personally involved in the conduct giving rise to this matter.

In support of her motion, Defendant has submitted an affidavit in which she asserts that she "did not open" the mail in question "or inspect" the contents thereof.  (Dkt. #41, Exhibit A).  In response, Plaintiff has submitted an affidavit in which he "asserts that Defendant Wem[p]le opened his legal mail out side his presence in violation of his First Amendment rights."  (Dkt. #48).  Defendant asserts that Plaintiff "cannot defeat summary judgment by flatly asserting that [she] improperly opened his mail without offering any evidentiary support."  While this statement undoubtedly holds true in other circumstances, the Court finds it unpersuasive where the only evidence submitted in support of Defendant's motion for summary judgment is an affidavit in which Defendant does nothing more than assert that she did not open or inspect the mail in question.

The Court recognizes that summary judgment may be appropriate where the evidentiary record is so one-sided that "no reasonable jury" could find for the non-moving party."  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  However, the evidence thus far submitted is not so one-sided as Defendant suggests.  To the contrary, the parties have each submitted nothing more than competing affidavits on the question central to Plaintiff's claim.  The Court would be more receptive to Defendant's argument if she had introduced additional evidence supporting her position.  However, the evidence thus far submitted reveals the existence of a stereotypical swearing contest which cannot be resolved without assessing the credibility of the respective witnesses, a task in which the Court cannot engage.

Accordingly, the undersigned recommends that Defendant's motion for summary judgment on the ground that she was not personally involved in the conduct giving rise to this action be denied.

**II.          Plaintiff has Stated a Claim on Which Relief May be Granted**

Defendant next asserts that she is entitled to relief because "the opening of one item of mail is insufficient to state a claim." In support of this argument, Defendant relies on *Merriweather v. Zamora*, 569 F.3d 307 (6th Cir. 2009), in which the court stated that "[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim." *Id.* at 317. Defendant's reliance on this authority is misplaced.

The portion of the *Zamora* case on which Defendant relies concerns whether certain defendants, who admitted opening four items of legal mail, were entitled to qualified immunity. In affirming the district court's conclusion that qualified immunity was not appropriate, the Sixth Circuit observed that in previous cases the court had found sufficient to state a claim allegations that a prison official had opened only two or three items of legal mail. The court in no way suggested that the First Amendment was not implicated where only a single item of legal mail was improperly opened. Instead, the court simply concluded that it was clearly established that improperly opening four items of legal mail violated the First Amendment. As the *Merriweather* court itself further observed, "[p]rison officials would also be on notice as of 2003 that opening properly marked legal mail alone, without doing more, implicates both the First and Sixth Amendments because of the potential for a 'chilling effect.'" *Id.* Defendant has identified no authority supporting her position that while improperly opening multiple items of legal mail is sufficient to state a claim, improperly opening but a single item

of legal mail fails to implicate the First Amendment. The Court is aware of no authority drawing such a distinction.

To establish that Plaintiff's allegations fail to state a claim on which relief may be granted, Defendant must demonstrate that it appears beyond doubt that Plaintiff can prove no set of facts in support of his claims that would entitle him to relief. As the Supreme Court stated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a motion to dismiss will be denied only where the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 545. The allegations in Plaintiff's complaint satisfy this standard. *See, e.g., Sallier v. Brooks*, 343 F.3d 868 (6th Cir. 2003). Accordingly, the undersigned recommends that Defendant's argument that Plaintiff's allegations fail to state a claim on which relief may be granted be rejected.

**III.        Eleventh Amendment Immunity**

In his complaint, Plaintiff states that he is suing Defendants in both their personal and official capacities. Defendant Wemple asserts that she is entitled to immunity under the Eleventh Amendment as to those claims asserted against her in her official capacity.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. This provision has long been interpreted as precluding "federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000).

Accordingly, the Eleventh Amendment generally precludes federal court actions against a State unless that state has waived its sovereign immunity or consented to suit in federal court. *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). The Court notes that the State of Michigan "has not consented to being sued in civil rights actions in the federal courts." *Johnson v. Unknown Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). An action asserted against a State official in her official capacity is considered an action against the State. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

An exception to this general rule exists, however, for claims seeking prospective injunctive or declaratory (non-monetary) relief compelling a state official (in her official capacity) to comply with federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

As previously noted, Plaintiff is seeking monetary relief, as well as unspecified injunctive relief. The Court finds that Defendant is entitled to immunity as to Plaintiff's claims for monetary damages against her in her official capacity. Accordingly, the Court recommends that Plaintiff's claims for monetary damages asserted against Defendant Wemple in her official capacity be dismissed.

**IV.        The Mail in Question is Not Legal Mail**

Defendant Wemple also asserts that the mail in question does not qualify for the added protections afforded to legal mail. Accordingly, even assuming Defendant opened the mail in question such does not constitute a violation of Plaintiff's rights. As Defendant correctly observes, the determination of whether a particular item of mail enjoys the protections accorded a prisoner's legal mail is a question of law for the Court. Before evaluating Defendant's argument, however, it is

necessary to clarify precisely what the Court concluded in response to her previous motion for summary judgment.

In her previous motion for summary judgment, Defendant asserted, in part, that the mail in question did not qualify as legal mail. In support of this argument, Defendant asserted that the mail in question was "sent from the United States Supreme Court's Office of Public Information." As previously noted, however, Defendant Wemple failed to submit evidence demonstrating that such was the case. Accordingly, the undersigned recommended that Defendant's motion for summary judgment be denied as to this particular claim because she "failed to demonstrate that the mail in question was not legal mail." Simply put, the undersigned did *not* recommend that the mail in question was, as a matter of law, legal mail entitled to heightened protection. Rather, the undersigned simply concluded that Defendant had failed to satisfy her burden that the mail in question was not legal mail. In adopting the Report and Recommendation, Judge Neff likewise did not conclude that the mail in question constituted legal mail, but simply determined that "the Magistrate Judge did not err in. . .concluding that Defendant is not entitled to summary judgment on this particular basis." Against this backdrop, the Court turns to the merits of Defendant's argument.

It is well recognized that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). For example, inmates retain the right, under the First Amendment, to receive mail. *See Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). Nonetheless, prison officials may impose restrictions on this right "that are reasonably related to security or other legitimate penological objectives." *Id.*

Courts have long recognized a distinction between legal mail and non-legal mail, the former warranting much greater protection from unreasonable intrusion. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 577 (1974); *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). For example, while prison officials may inspect (and even read) a prisoner's incoming non-legal mail, courts have consistently held that while prison officials have a legitimate right to inspect incoming legal mail for contraband they may not read a prisoner's incoming legal mail and must perform any inspection thereof in the prisoner's presence. *See Sallier*, 343 F.3d at 874. However, "[n]ot all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights." *Id.*

For example, mail from sources such as a county clerk, does not qualify as constitutionally protected legal mail, absent a "specific indication" on the envelope that the contents are "to be opened only in the presence of the prisoner." *Id.* at 875-878. As the *Sallier* court observed:

> Mail from a county clerk simply does not implicate a prisoner's right of access to the courts, of petitioning the government to redress grievances, or of competent representation by counsel. The administrative matters about which one generally communicates with a county clerk. . .are not the types of legal matters that raise heightened concern or constitutional protection.

*Id.* at 876.

Also, mail from professional organizations, such as the American Bar Association (ABA), does not constitute legal mail. *Id.* at 875. As the *Sallier* court observed:

> The ABA is a professional organization designed to support attorneys in a variety of ways; it is not an organization that has the authority to take action on behalf of an inmate. . .Given that the ABA is not a direct-services legal organization and generally does not provide legal advice and that the envelope contained no marking to alert a prison employee that it was to be opened only in the presence of the prisoner, receipt of the correspondence did not implicate constitutionally protected legal mail rights.

*Id.* (internal citations omitted).

In her affidavit, Defendant asserts that the return address on the mail in question indicated that it was sent from "the United States Supreme Court, Office of Public Information."  (Dkt. #41, Exhibit A).  The Public Information Office of the Supreme Court of the United States is one of the official sources from which the public can obtain print copies of the Court's opinions.  *See* Where to Obtain Supreme Court Opinions, http://www.supremecourt.gov/opinions/obtainopinions.aspx (last visited on July 9, 2010).  Exhibits submitted by Plaintiff reveal that the item of mail at issue in this matter consisted of nothing more than copies of decisions by the Supreme Court.  (Dkt. #1, 31, 47).  Plaintiff does not dispute that the return address on the mail in question identified the sender as "the United States Supreme Court, Office of Public Information."  Also, Plaintiff does not contend that the mail in question was identified as legal mail or marked that it was to be opened only in his presence.

The Court has not located any authority addressing whether mail from the source in question (or other similar source) enjoys the status as constitutionally protected legal mail.  The Court concludes that it does not.  Mail clearly identified as originating from "the United States Supreme Court, Office of Public Information," and containing no additional markings suggesting that the mail should receive special treatment, is much more analogous to mail from a county clerk or the ABA than mail from a court or attorney.  Mail from an office of *public information* indicates that the material therein is not confidential.  As with mail from a county clerk, such mail does not implicate Plaintiff's right of access to the courts, of petitioning the government to redress grievances, or of competent legal representation.  Moreover, like the ABA, the Office of Public Information does not provide legal advice and lacks the authority to undertake action on Plaintiff's behalf.  Furthermore, the Court discerns no

danger that failing to afford legal mail protections to the mail in question will have a chilling effect on

a prisoner's exercise of his or her First Amendment rights or threaten their right of access to the courts.

Simply put, the United States Supreme Court, Office of Public Information is nothing

more than a source from which the public can obtain information. In sum, therefore, the Court finds that

mail from the United States Supreme Court, Office of Public Information, which contains no additional

markings suggesting that the mail should receive special treatment, simply does not involve the type of

legal matters that raise "heightened concern or constitutional protection." Accordingly, the Court finds

that the mail in question is not legal mail. As such, that the mail was allegedly opened, pursuant to

MDOC policy, prior to its delivery to Plaintiff did not violate Plaintiff's rights. The undersigned,

therefore, recommends that Defendant's motion for summary judgment be granted on this basis.


**V.        Qualified Immunity**

Finally, Defendant Wemple asserts that she is entitled to qualified immunity. The

doctrine of qualified immunity recognizes that government officials must be able to carry out their duties

without fear of harassing litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). As is well

recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to

liability for damages, and if unjustified lawsuits are quickly terminated. *Id.* Generally, when

government officials perform discretionary functions, they are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which

a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also,*

*Behrens v. Pelletier*, 516 U.S. 299, 301 (1996). The question of whether a defendant enjoys qualified

immunity is a question of law for the Court to resolve. *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If such fails to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity. *See Callahan*, 129 S.Ct. at 816. On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted. The defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right." *Id.*

Where neither the motion for qualified immunity nor the opposition thereto is supported by evidence, the first step of the qualified immunity analysis focuses on the allegations in the plaintiff's complaint and whether such state a claim for violation of the plaintiff's constitutional rights. If, on the other hand, the motion for qualified immunity and/or the opposition thereto are supported by evidence, such must be considered pursuant to the summary judgment standard articulated above. Thus, if the evidence submitted by the parties demonstrates the existence of a genuine factual dispute, the resolution of which is essential to determining whether the defendant violated the plaintiff's constitutional rights, qualified immunity is not warranted. However, if the evidence establishes that the defendant did not violate the plaintiff's constitutional rights, qualified immunity is appropriate. *See, e.g., Scott v. Harris*, 550 U.S. 372, 377-86 (2007) (officer entitled to qualified immunity where evidence was such that "no reasonable jury" could have concluded that officer violated the plaintiff's constitutional rights).

As discussed in the preceding section, the Court concludes that because the mail in question is not legal mail, Plaintiff has not suffered a violation of his rights. Accordingly, the undersigned recommends, in the alternative, that Defendant is also entitled to qualified immunity as to Plaintiff's claims for monetary damages.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendant Wemple's Second Motion for Summary Judgment</u>, (dkt. #40), be **granted** and Plaintiff's action dismissed.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date: July 12, 2010                   /s/ Ellen S. Carmody
                                      ELLEN S. CARMODY
                                      United States Magistrate Judge